UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL D. DeWOLF,

                                  Plaintiff,                  1:17-CV-0277 (BKS/CFH)

v.

SAMARITAN HOSPITAL, KATHRYN E. O'BRIEN,
and OVERTON, RUSSELL, DOERR AND
DONOVAN, LLP,

                                  Defendants.
_____

APPEARANCES:

*For Plaintiff:*
Stephen A. Pechenik
30 24th Street
Troy, NY 12180

*For Defendants:*
Thomas R. McCormick
Melissa M. Tobrocke
Linda L. Donovan
Overton, Russell, Doerr & Donovan, LLP
19 Executive Park Drive
Clifton Park, NY 12065

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Michael DeWolf brings this action against Defendants Samaritan Hospital,

Kathryn E. O'Brien, and Overton, Russell, Doerr & Donovan, LLP ("ORDD"), alleging that they

engaged in unlawful credit collection practices in violation of the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. §§ 1692d, 1692e, 1692f, and in violation of New York law.[1] (*See* Dkt. No. 1, ¶¶ 5-9, 23-29). Plaintiff seeks money damages in the amount of $250,000.

Defendants move to dismiss for lack of personal jurisdiction under Rules 12(b)(2), improper service under Rule 12(b)(5),[2] and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion to dismiss is: (i) denied to the extent it seeks dismissal of Defendants O'Brien and ORDD pursuant to Rule 12(b)(5); and (ii) granted to the extent it seeks dismissal of the FDCPA claim against all Defendants pursuant to Rule 12(b)(6).

## II.   BACKGROUND FACTS

### A.   Plaintiff's Allegations[3]

Plaintiff alleges that, on March 18, 2016, Defendant Samaritan Hospital filed an action against Plaintiff in state court, seeking payment of $4,785.83 for "hospital and/or medical services" rendered between November 2012 and August 2013. (Dkt. No. 1, ¶ 12). The complaint in the state debt collection suit was signed by Brian Strohl, an attorney associated with Defendant ORDD, and verified by Linda Berner, an officer of Defendant Samaritan Hospital. (*Id.* ¶¶ 13-14, *id.* at 9-10). Plaintiff answered that complaint on July 11, 2016. (*Id.* ¶ 17).

Approximately a month later, on August 17, 2016, Defendant O'Brien—an associate at Defendant ORDD—and Defendant ORDD, who allegedly "were acting in concert" with Defendant Samaritan Hospital to collect the debt, submitted "without explanation, a stipulation

---

[1] Plaintiff's state-law causes of action include a claim under section 349 of the New York General Business Law and a claim for abuse of process. (*See* Dkt. No. 1, ¶¶ 26-29).

[2] While Plaintiff challenges the sufficiency of service of process, he does not raise any other ground to support dismissal under Rule 12(b)(2) for lack of personal jurisdiction. As "[m]otions challenging the sufficiency of service of process are properly made under Rule 12(b)(5), not Rule 12(b)(2)," *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 310 n.9 (S.D.N.Y. 2008), the Court treats that branch of his motion as brought under Rule 12(b)(5) only.

[3] The allegations are taken from the Complaint and assumed to be true for purposes of this motion. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

of discontinuance with prejudice" to Plaintiff's attorney. (*Id.* ¶¶ 16, 18). When questioned by Plaintiff's attorney, Defendant O'Brien "refused to furnish any explanation for the furnishing" of the stipulation and "sought to protect her law firm and their client Samaritan Hospital, by alleging the existence of an attorney and client privilege." (*Id.* ¶ 19). On February 27, 2017, the stipulation was returned to Defendants O'Brien and ORDD for signing and filing with the state court. (*Id.* ¶ 20). Plaintiff further alleges "[u]pon information and belief" that "in or about 2013, 2014, 2015 and up to the present date, the defendants and each of them have reported negatively on the alleged obligation" of Plaintiff. (*Id.* ¶ 21). Plaintiff claims that Defendants' "conduct in negatively reporting to credit agencies and in commencing and prosecuting the lawsuit in [state court], was done in bad faith and constituted false and misleading statements to and about [Plaintiff]." (*Id.* ¶ 24).

      **B.**     **Service of the Summons and Complaint**[4]

According to her affidavit in support of the motion to dismiss, Defendant O'Brien found a copy of the Summons and Complaint in this action "directed to [her] attention" "sitting on her desk" when she returned from a court appearance on May 3, 2017. (Dkt. No. 5-3, ¶ 10). She further asserts that "[n]o attempts were made to serve [her] while [she] was present in the office or while [she] was at [her] home." (*Id.*). Further, Ms. O'Brien states that the Summons and Complaint for Defendant ORDD "was also sitting on [her] desk," that Plaintiff "made no effort to ensure the papers served upon the limited liability partnership were directly delivered to a partner," and that Plaintiff "left the summons and complaint for ORDD with the receptionist

---

[4] When faced with a challenge under Rule 12(b)(5) for insufficient service of process, courts look to matters outside the complaint to ascertain whether jurisdiction exists. *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). Accordingly, the facts concerning service are taken from the parties' affidavits. However, the Court will not consider assertions outside of the pleadings in deciding Defendants' motion seeking dismissal under Rule 12(b)(6) for failure to state a claim. *See Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 174-75 (N.D.N.Y. 2011).

without delivery instructions."[5] (*Id.* ¶ 11). Defendants, however, do not challenge the sufficiency of service on Defendant Samaritan Hospital.

In opposition to the motion to dismiss, Plaintiff's counsel submits an affidavit and copies of the process server's affidavits of service. (*See* Dkt. No. 10-1, ¶ 5; Dkt. No. 10-2). Process server Michelle M. Terrell stated in her affidavit of service on Defendant ORDD that she "deliver[ed] a true copy of [the Summons and Complaint] to Heather KaLouski [sic] personally" and "knew said individual to be Authorized Agent" of Defendant ORDD. (Dkt. No. 10-2, at 4). Similarly, Ms. Terrell stated in her affidavit of service on Defendant O'Brien, who she incorrectly identified as a "Corporation/Business," that she "deliver[ed] a true copy of [the Summons and Complaint] to Heather KaLouski personally" and "knew said individual to be Authorized Agent" of Defendant O'Brien. (*Id.* at 6). Both affidavits of service indicated that Ms. Terrell also mailed a copy of the Summons and Complaint to Defendants ORDD and O'Brien at ORDD. (*See id.* at 4, 6).

The reply affidavit submitted by Thomas R. McCormick, a partner at ORDD, states that ORDD is registered as a domestic limited liability partnership with the New York Department of State and that "[a] simple internet inquiry . . . shows that ORDD has no registered agent." (Dkt. No. 12, ¶ 10).[6]

---

[5] Defendants have not cited to any facts to support the conclusory assertion that "no effort" was made to serve ORDD partners.

[6] Mr. McCormick did not attach a record of that "simple internet inquiry." ORDD's listing on the New York Department of State website, however, indicates "NONE" under "Registered Agent." *See* Entity Information for Overton, Russell, Doerr, and Donovan, LLP, N.Y. Dep't of State, https://appext20.dos.ny.gov/corp_public/ corpsearch.entity_search_entry (last visited Dec. 7, 2017). The Court takes judicial notice of this public record. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts "not subject to reasonable dispute").

### III. DISCUSSION

#### A. Sufficiency of Service

##### 1. Standard of Review

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Absent consent, this means there must be authorization for service of summons on the defendant." *Id.* A court "must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'" *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Preston v. New York,* 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002)). A plaintiff must, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." *Kwon v. Yun*, No. 05-cv-1142, 2006 WL 416375, at *2, 2006 U.S. Dist. LEXIS 7386, at *6 (S.D.N.Y. Feb. 21, 2006).

##### 2. Proper Service Under Rule 4

Rule 4 of the Federal Rules of Civil Procedure provides that service of a summons and complaint may be effected by: (1) delivering process to the individual defendant personally; (2) leaving process at the individual defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering process to an authorized agent of the defendant, whether the defendant be an individual, corporation, partnership, or association. *See* Fed R. Civ. P. 4(e)(2), (h)(1)(B). Alternatively, Rule 4 permits service to be effected by "following state law for serving a summons in an action . . . in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1) (service on an individual); *see also*

5

Fed. R. Civ. P. 4(h)(1)(A) (cross-referencing Rule 4(e)(1) for service on a corporation, partnership, or association).

Under New York law, the following methods may generally be used to serve process on an individual: (1) delivering the summons to the defendant personally; (2) delivering the summons to a person of suitable age and discretion at the defendant's actual place of business, dwelling place, or usual place of abode, and mailing the summons to the defendant's last known residence or actual place of business (a procedure commonly referred to as leave-and-mail service); or (3) delivering the summons to an individual designated as the defendant's agent for service. *See* N.Y. C.P.L.R. 308(1)-(3). Service on a limited partnership may generally be made by delivering the summons to "any managing or general agent or general partner of the limited partnership" or any other agent authorized by appointment or by law to receive service, N.Y. C.P.L.R. 310-a, or by delivering duplicate copies of the summons to the New York Secretary of State in Albany, *see* N.Y. P'ship Law § 121-1505.

### 3.     Analysis

Defendants do not dispute that Defendant Samaritan Hospital was properly served; they only challenge the sufficiency of service on Defendants O'Brien and ORDD. The Court finds that Plaintiff has met his burden to show proper service and that Defendants' challenge to the sufficiency of service on those parties has no basis in either law or fact.

Defendants contend that "the defendant [sic] failed to properly serve defendant O'Brien, as no more than one attempt at personal service was made, and only at Ms. O'Brien's office." (Dkt. No. 5-1, at 9). Further, Defendants argue that the "New York Civil Practice Law and Rules requires a showing of diligent efforts to personally serve a defendant with a Summons and Complaint." (*Id.*). Defendant O'Brien similarly states that "[n]o attempts were made to serve [her] while [she] was present in the office or while [she] was at [her] home" and that "[a]s a

6


personally named individual defendant, the plaintiff is required to diligently attempt to personally serve [her]." (Dkt. No. 5-3, ¶ 10). New York law, however, does not require personal service on an individual; it is acceptable to serve an individual through the leave-and-mail method of service, by which process is delivered to "a person of suitable age and discretion at the actual place of business . . . of the person to be served" and also mailed "to the person to be served at his or her actual place of business." *See* N.Y. C.P.L.R. 308(2).

Plaintiff has submitted his process server's affidavit of service on Defendant O'Brien, which shows that the Summons and Complaint were delivered to "Heather KaLouski" and mailed to Defendant O'Brien's place of business, "19 Halfmoon Executive Park Drive, Clifton Park, NY 12065." (Dkt. No. 10-2, at 6). Although the process server incorrectly checked the box for "Corporation/Business" instead of the box for "Suitable Person," the process server affirmed that she "knew" that "Heather KaLouski" was the "Authorized Agent" for Defendant O'Brien. (*Id.*). Defendants do not dispute that "Heather KaLouski" was a person of suitable age and discretion. *See City of New York v. Chem. Bank*, 470 N.Y.S.2d 280, 285 (N.Y. Sup. Ct. 1983) ("The person to whom delivery is made must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant. Thus, delivery to . . . employees [and] co-workers . . . as persons of suitable age and discretion, has been sustained."). Nor do they contend that the mailing address was not Defendant O'Brien's actual place of business. Based on the process server's affidavit of service, and absent any evidence contradicting the process server's statements, the Court finds that Plaintiff has met his burden to establish proper service on Defendant O'Brien. *See Martinez v. Alimentos Saludables Corp.*, No. 16-cv-1997, 2017 WL 5033650, at *5, 2017 U.S. Dist. LEXIS

156657, at *12-13 (E.D.N.Y. Sept. 22, 2017) (finding that an individual defendant was properly served when process was delivered and mailed to the defendant's actual place of business).

With regard to service on Defendant ORDD, Defendants contend that service is improper because Plaintiff left a copy of the Summons and Complaint with the "receptionist" and not an ORDD partner.[7] (Dkt. No. 5-1, at 8). New York law, however, does not require personal service on a partner of a limited liability partnership. Service may be effected by delivering the summons to "any . . . agent or employee of the limited partnership authorized by appointment to receive service or to any other person designated by the limited partnership to receive process." N.Y. C.P.L.R. 310-a(a); *see also* Vincent C. Alexander, *Practice Commentaries*, McKinney's Cons. Laws of N.Y., Book 7B, N.Y. C.P.L.R. 310-a (indicating that the "methods specified in subdivisions (a) and (b) of CPLR 310-a appear to be applicable not only to service on a limited partnership but also on a limited liability partnership").

The process server's affidavit of service on Defendant ORDD shows that the Summons and Complaint were delivered to "Heather KaLouski"—whom Plaintiff's counsel refers to as "Heather Kolouski" (Dkt. No. 10-1, ¶ 7)—and that the process server "knew said individual to be Authorized Agent" of Defendant ORDD. (Dkt. No. 10-2, at 4). None of Defendants' affidavits controvert that statement—indeed, Defendants' papers fail to even mention any Heather KaLouski/Kolouski. Nor do Defendants assert that the receptionist to whom the Summons and Complaint were delivered was without apparent authority to receive process on behalf of

---

[7] Although Defendants contend in their memorandum of law that "the managing partner and other partners [were] present at the time service was attempted" and that "Plaintiff did not inquire as to whether any partners were available to receive service" (Dkt. No. 5-1, at 8), neither the affidavit of Mr. Strohl (Dkt. No. 5-2) nor that of Ms. O'Brien (Dkt. No. 5-3) support these contentions. At most, Ms. O'Brien states that the Summons and Complaint were left "with the receptionist without delivery instructions." (Dkt. No. 5-3, ¶ 11). In any event, delivering process to an agent with apparent authority to receive service is sufficient under New York law. *See* N.Y. C.P.L.R. 310-a; *see Fashion Page, Ltd. v. Zurich Ins. Co.*, 406 N.E.2d 747, 751 (1980). Contrary to Defendants' contention, neither Plaintiff nor his process server was required to attempt personal service on an ORDD partner.

Defendant ORDD. Their only response, contained in Defendants' counsel's reply affidavit, is that New York Department of State records show that ORDD has no "registered" agent. (*See* Dkt. No. 12, ¶ 10). But Defendant has not cited any authority for the proposition that a "registered" agent is the only individual who can receive service on behalf of a limited liability partnership. As noted above, service may be effected on any agent or employee authorized to receive service. N.Y. C.P.L.R. 310-a(a). Here, Plaintiff has provided the process server's sworn assertion that she knew Heather KaLouski/Kolouski to be an authorized agent of ORDD. Defendants have not disputed this assertion. Thus, the Court concludes that service was sufficient. *See Cellino & Barnes, P.C. v. Martin, Lister & Alvarez, PLLC*, 985 N.Y.S.2d 776, 778 (4th Dep't 2014) (rejecting a defendant's contention that service was improper where the process server's affidavit of service indicated that delivery was made to a receptionist identified as an agent authorized to accept service, and where the defendant "submitted no evidence to contradict the process server's sworn assertions" and "did not submit an affidavit from the receptionist"); *Fashion Page*, 406 N.E.2d at 751 (stating that a defendant "generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions"). Accordingly, Defendants' motion to dismiss for insufficient service is denied.

    **B.    Failure to State a Claim**

        **1.    Standard of Review**

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere

labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

### 2.     Samaritan Hospital

Defendants argue that Samaritan Hospital should be dismissed with prejudice because it "is not a 'debt collector' within the meaning of the FDCPA." (Dkt. No. 5-1, at 4). Although Defendants do not elaborate further or cite any supporting law, the Court construes the argument to be that Samaritan Hospital cannot be held liable as a matter of law under the FDCPA because it was a creditor seeking to collect its own debt, not a debt collector seeking to collect the debt of another. *See Vincent v. Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (noting "the general rule that creditors are not subject to the FDCPA"). In a cryptic response similarly devoid of any legal citations, Plaintiff contends that, "[a]s a result of the restructuring of health care services resulting due [sic] to the enactment of the Affordable Care Act, the provision of emergency, urgent care, hospital or other medical services may not be done by the defendant, Samaritan Hospital" and that "[n]ew entities have been formed by the parent company of Samaritan Hopsital to deal with these services." (Dkt. No. 10-3, at 2). Plaintiff consequently urges that "this

Court cannot presently determine that defendant to be an improper party." (Dkt. No. 10-3, at 2). Defendants reply that "[t]he plaintiff does not explain how the Affordable Care Act creates a situation in which the FDCPA, which does not apply to the original creditor, now somehow applies to Samaritan Hospital." (Dkt. No. 12, at 3).

In order to state a claim under the FDCPA, a plaintiff must establish three elements: (1) the plaintiff must be a "consumer" who is alleged to owe a debt or the target of efforts to collect a consumer debt; (2) the defendant must be a "debt collector"; and (3) the defendant must have engaged in conduct violating FDCPA requirements. *See Cruz v. Credit Control Servs., Inc.*, No. 17-cv-1994, 2017 WL 5195225, at *4 (E.D.N.Y. Nov. 8, 2017); *see also* 15 U.S.C. §§ 1692d, 1692e, 1692f (prohibiting debt collectors from engaging in specified debt collection practices). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The Complaint is devoid of any facts indicating that Defendant Samaritan Hospital is a debt collection business or an entity that regularly collects or attempts to collect debts due another. If anything, the state court complaint which Plaintiff attached to his Complaint tends to show that Samaritan Hospital sought to collect a debt allegedly owed to Samaritan Hospital itself, not debt owed to another. (*See* Dkt. No. 1, at 9 (stating that Samaritan Hospital "rendered hospital and/or medical services to [Mr. DeWolf], or individuals for whom [Mr. DeWolf] is financially responsible," and that "[a]lthough due demand has been made, [Mr. DeWolf] has failed to pay the full amount due for services rendered by [Samaritan Hospital]")). Plaintiff's speculation in his opposition brief that the provision of hospital or medical services might not be

11

done by Samaritan Hospital but by "[n]ew entities" does not salvage his claim against Samaritan Hospital. As an initial matter, the Court cannot consider that new allegation, as it is outside of the pleadings. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading[s] for purposes of Rule 12(b)."); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015) (deciding not to "consider the new factual assertions Plaintiffs make in their opposition papers"). In any event, the new allegation does not move the needle on the issue of whether the Complaint plausibly alleges that Samaritan Hospital is a debt collector. Even assuming that the alleged services at issue in this case were rendered by entities other than Samaritan Hospital, it would be a leap to conclude merely on that basis that the debt was owed to such entities. In other words, Plaintiff has failed to allege that the debt at issue in the debt collection action in state court was owed to an entity other than Samaritan Hospital. Accordingly, the FDCPA claim against Samaritan Hospital must be dismissed.

### 3. Kathryn O'Brien

Defendants argue that the FDCPA claim against Defendant O'Brien should also be dismissed because "Plaintiff has failed to allege facts that would show a basis for a claim against Ms. O'Brien personally." (Dkt. No. 5-1, at 4). Defendants point out that "[t]he only complained-of act Plaintiff identifies is the conduct of Ms. O'Brien regarding statement indicating her client instructed her to discontinue the lawsuit." (*Id.*). Plaintiff fails to respond to that argument.

The Complaint contains only a few references to Defendant O'Brien's alleged conduct. One such instance is the allegation that Ms. O'Brien and ORDD "were acting in concert" with Samaritan Hospital to collect the alleged debt. (Dkt. No. 1, ¶ 16). That allegation is conclusory, and the Court need not accept it as true. *See Bell*, 550 U.S. at 555. Plaintiff additionally states that Ms. O'Brien and ORDD "furnished without explanation, a stipulation of discontinuance

with prejudice" of the state court action, and that Ms. O'Brien "refused to furnish any explanation for the furnishing of the aforesaid stipulation and sought to protect her law firm and their client Samaritan Hospital, by alleging the existence of an attorney and client privilege." (Dkt. No. 1, ¶¶ 18-19). These allegations, even accepted as true, do not plausibly suggest any illegal conduct by Defendant O'Brien that would entitle Plaintiff to relief under the FDCPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))). Providing opposing counsel with a stipulation of discontinuance, even without explanation, cannot plausibly constitute harassment or abuse, *see* 15 U.S.C. § 1692d, a false or misleading representation, § 1692e, or an unfair debt collection practice, § 1692f.[8] Plaintiff has therefore failed to state a claim under the FDCPA against Defendant O'Brien.

### 4.  ORDD

Although Defendants do not clearly articulate the basis for dismissal under Rule 12(b)(6) of the FDCPA claim against Defendant ORDD,[9] they do argue that the Complaint is frivolous in its entirety. (*See* Dkt. No. 5-1, at 9). In his opposition, Plaintiff states that he has set forth "the legal basis for each cause of action and facts sufficient to maintain those causes of action." (Dkt. No. 10-3, at 1-2).

---

[8] The Court has considered Defendants' request for attorneys' fees under Rule 11. (*See* Dkt. No. 5-1, at 9-10). Setting aside the fact that Defendants have failed to submit their request through a separate motion, as required by Rule 11(c)(2), the Court, in the present circumstances and given its disposition of the case, denies the request.

[9] To the extent Defendants seek dismissal based on the statute of limitations (*see* Dkt. No. 5-1, at 4-5), the Court notes that their argument relies on facts outside the pleadings (*see id.* at 5 (indicating the date "ORDD first reported the unpaid debt to credit reporting agencies")) and, more importantly, misconstrues allegations in the Complaint (*see id.* (mischaracterizing separate instances of alleged misconduct—the commencement of the debt collection action and the negative reporting to credit agencies—as one FDCPA violation)). Defendants' statute-of-limitations affirmative defense thus cannot properly be considered on this motion to dismiss. *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (explaining that "in the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time").

13

Plaintiff's FDCPA claim against Defendant ORDD rests on two allegations of misconduct: first, the commencement and prosecution of the debt collection action in state court; and second, the negative reporting of Plaintiff's alleged debt to credit agencies. (Dkt. No. 1, ¶ 24). Plaintiff claims that those two acts were "done in bad faith and constituted false and misleading statements." (*Id.* ¶ 24). The Complaint, however, does not contain any nonconclusory factual allegations indicating how those two acts were done in bad faith or were false or misleading. There is no allegation, for example, that the debt sought to be collected and reported to credit agencies was not due and owing for whatever reason—e.g., because it was invalid, satisfied, or never incurred in the first place—or that Defendants failed to reasonably investigate the existence of the debt. *See Lena v. Cach, LLC*, No. 14-cv-1805, 2015 WL 4692443, at *2, 2015 U.S. Dist. LEXIS 103007, at *12 (N.D. Ill. Aug. 6, 2015) (finding that the plaintiff's allegations did "not permit the reasonable inference that [the debt collector] lacked a good faith basis to believe it was entitled to enforce [the plaintiff's] debt; in particular, she does not contend that she did not owe the debt that was the subject of the collection action"). Further, the fact that Defendants sought a voluntary dismissal of the debt collection action in state court does not plausibly suggest wrongdoing. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015) ("[S]tanding alone, the allegation that [the debt collector] filed and pursued the lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt . . . ."); *see also Pantoja v. Portfolio Recovery Assocs., LLC*, No. 13-cv-7654, 2015 WL 1396609, at *3-4, 2015 U.S. Dist. LEXIS 36511, at *10 (N.D. Ill. Mar. 24, 2015) (rejecting the argument that a debt collector's voluntary dismissal of a state court action was done in bad faith based on the allegation that the debt collector had no intention of proving its case from the beginning).

Similarly, the allegation "[u]pon information and belief" that "up to the present date, the defendants and each of them have reported negatively on the alleged obligation of Michael DeWolf" falls short of suggesting any plausible misconduct. (Dkt. No. 1, ¶ 21). Plaintiff does not cite any authority for the proposition that reporting "negatively" to credit bureaus is per se actionable under the FDCPA.[10] While the statute prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," § 1692e(8), Plaintiff has not alleged any facts indicating the basis for his belief that Defendants reported credit information which they should have known to be false. *See Harrison v. City of New York*, No. 15-cv-4141, 2017 WL 4162340, at *3 (S.D.N.Y. Sept. 19, 2017) ("While a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." (internal quotation marks omitted)). Given the aforementioned pleading deficiencies, the Court concludes that Plaintiff has failed to state an FDCPA claim against Defendant ORDD.

### C. State Law Claims

As Plaintiff's sole federal claim is dismissed against all Defendants, and given the absence of any extraordinary circumstances, the Court declines in its discretion to retain supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

---

[10] Plaintiff does not advance any claim under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x. While that statute forbids the provision of inaccurate information to consumer reporting agencies, § 1681s-2(a), no private right of action exists to enforce that duty, *see Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (holding that "there is no private cause of action for violations of § 1681s–2(a)).

15

pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). Judicial economy, convenience, fairness, and comity do not counsel exercise of supplemental jurisdiction here, since Plaintiff is free to either amend his Complaint to remedy the pleading deficiencies identified in this decision or to refile his claims in state court. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (discerning "no extraordinary inconvenience or inequity occasioned by permitting the claimed to be refiled in state court"); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."). Accordingly, Plaintiff's New York law claims are dismissed without prejudice

## IV.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 5) is **DENIED** in part and **GRANTED** in part; and it is further

**ORDERED** that Defendants' motion to dismiss Defendants O'Brien and ORDD under Fed. R. Civ. P. 12(b)(2) and 12(b)(5) is **DENIED**; and it is further

**ORDERED** that Defendants' motion to dismiss the FDCPA claim (first cause of action) against all Defendants under Fed. R. Civ. P. 12(b)(6) is **GRANTED**, and the FDCPA claim (first cause of action) is **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 5) is otherwise **DENIED**; and it is further

**ORDERED** that, if within thirty (30) days of this Order Plaintiff does not file an amended complaint addressing the concerns in this Order regarding the FDCPA claim, this action will be **DISMISSED without further order** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: December 7, 2017
Syracuse, New York

Brenda K. Sannes
U.S. District Judge